1  LEWIS BRISBOIS BISGAARD & SMITH LLP
   DEBORAH F. SIRIAS, SB# 102893
2    E-Mail: sirias@lbbslaw.com
   221 North Figueroa Street, Suite 1200
3  Los Angeles, California 90012
   Telephone: 213.250.1800
4  Facsimile: 213.250.7900

5  FREDRIKSON & BYRON, P.A.
   Paul E. Thomas (MN #208577)
6    E-Mail: pthomas@fredlaw.com
   Lora M. Friedemann (MN #259615)
7    E-Mail: lfriedemann@fredlaw.com
   200 South Sixth Street, Suite 4000
8  Minneapolis, MN 55042
   Telephone: 612.492.7000
9  Facsimile: 612.492.7077

10 *Attorneys for Plaintiff* CHROMA
   MAKEUP STUDIO LLC

11

12              UNITED STATES DISTRICT COURT

13       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15 CHROMA MAKEUP STUDIO LLC,       CASE NO. CV12-09893 PLA

16           Plaintiff,             **COMPLAINT**

17       vs.                        Trial Date:    None Set

18 BOLDFACE GROUP, INC. and
   BOLDFACE LICENSING +
19 BRANDING,

20           Defendants.

21

22

23       Plaintiff Chroma Makeup Studio LLC, for its Complaint against Defendants

24 Boldface Group, Inc. and Boldface Licensing + Branding, states and alleges as

25 follows:

26                        **THE PARTIES**

27       1.    Chroma Makeup Studio LLC is a California limited liability company

28 having its principal place of business in Beverly Hills, California.

4843-6621-9793.1
                            COMPLAINT

2. 1. Upon information and belief, Boldface Group, Inc. and its subsidiary Boldface Licensing + Branding are Nevada corporations having their principal places of business in Santa Monica, California.

## JURISDICTION AND VENUE

3. 2. This is an action for trademark infringement and unfair competition arising under the trademark laws of the United States, 15 U.S.C. § 1114 *et seq.*, under the California Business & Professions Code § 17200 *et seq.*, and under the common law.

4. The Court has jurisdiction under 28 U.S.C. §§ 1338(a)-(b) and 1367. Venue is proper under 28 U.S.C. § 1391(b)-(c).

## FACTS

5. Chroma Makeup Studio LLC ("**Chroma**") was founded in 2000 by Mr. Michael Rey III and Ms. Lisa Casino, both of whom have more than two decades of experience as makeup artists, and both of whom are recognized by their peers as experts and masters in the fields of beauty, makeup, and eyebrow shaping services.

6. Since first opening its doors nearly twelve years ago in December of 2000, Chroma has been located at 9605 S. Santa Monica Boulevard in Beverly Hills, California:







This location stands not only one block from the world-famous Rodeo Drive but also stands within the "Golden Triangle," the most prestigious retail and commercial real estate district in the Los Angeles area, and one of the most famous and exclusive shopping districts in the world:



7. From that exclusive location on South Santa Monica Boulevard, Chroma has continuously used its CHROMA and CHROMA MAKEUP STUDIO trademarks in commerce in connection with its premier and individually customized

1 makeup and beauty services for the past twelve years:



8. In addition, Chroma has used its CHROMA, CHROMA COLOUR, and CHROMA MAKEUP STUDIO + C Design marks in commerce in connection with cosmetics and beauty products and accessories continuously for the past twelve years:

 









(Hereinafter, the CHROMA, CHROMA COLOUR, CHROMA MAKEUP STUDIO, and CHROMA MAKEUP STUDIO + C Design marks are referred to as the "**Chroma Marks**.")

9. Chroma has sold its exclusive beauty products and accessories from its permanent 9605 S. Santa Monica Boulevard location continuously for the last twelve years. During that twelve year span, Chroma products have been available at other locations in the Los Angeles area: from the Allen Edwards Salon (now called the C Salon after an ownership change), located at 12050 Ventura Blvd., Studio City, California 91604; from the G. K. Salon, located at 18590 Ventura Boulevard, Tarzana, California 91356; from the Estetica Salon, which is now closed but which was located at Brighton Way in Beverly Hills, California 90210; and from Hairlab, which is located at 22033 Clarendon Street, Woodland Hills, California 91367.

1  Currently, the only other brick & mortar location from which Chroma products can
2  be obtained in Los Angeles is the Chroma Makeup Studio at Butterfly Loft, which is
3  located at 17401 Ventura Boulevard in Encino, California 91316.
4        10.    Chroma also sells its products online through its website at
5  www.ChromaMakeupStudio.com, from which Chroma's loyal customers
6  throughout the United States and overseas have obtain Chroma's beauty products
7  and accessories for the last twelve years.  In just the last eighteen months, Chroma
8  has fulfilled orders and shipped products bearing the Chroma Marks to forty-one of
9  the United States and to the District of Columbia.  In addition, Chroma has shipped
10 products to customers in Canada, Mexico, the United Kingdom, Belgium,
11 Switzerland, Finland, and Japan.
12       11.    While Chroma has common law trademark ownership rights that
13 extend nationwide, the Chroma Marks are particularly strong and well-known in the
14 Los Angeles area.  Esteemed by celebrated Hollywood actors, Beverly Hills
15 executives, and entertainment professionals for its expertise in providing in-studio
16 and on-location makeup services and for its high quality line of cosmetics and
17 accessories, Chroma has achieved a prominent place in the beauty industry and has
18 made itself indispensible as a service provider to the entertainment industry.
19 Among its prominent clientele, Chroma lists Rebecca Gayheart, Mary Kate Olsen,
20 Ashley Olsen, Rachel Weisz, and Britney Spears.  Customers who have posted
21 reviews of Chroma on the Yelp.com website since 2006 have given Chroma Yelp's
22 highest five star rating, have praised the owners with phrases like "Michael is an eye
23 brow god!" and "Lisa is theeeeeeeeee best!," and several have declared their
24 devotion to Chroma products with phrases like "I haven't bought makeup anywhere
25 else in years."  In 2011, online visitors to the "LA Hotlist!" at the LA.CityVoter.com
26 website voted Chroma number 1 in the beauty supply category.
27       12.    Because Chroma has achieved prominence in the Los Angeles area for
28 its expertise in beauty services, Chroma has received regular local media attention:

1  it has been featured at least five times in magazines such as *Los Angeles*
2  *Confidential* and *Beverly Hills* and at least twice in the *Moxley Head to Toe Guide*
3  *to Beauty Services in Los Angeles*.

4      13.    The constant commitment to excellence of Lisa Casino and Michael
5  Rey III over the twelve year span of Chroma's existence has caused Chroma's
6  reputation to grow to the point at which it has received national notice and
7  nationwide media attention through features in leading fashion magazines such as
8  *Vogue, Elle, Self, Genlux,* and *Lucky*.

9      14.    Twelve years of successful business growth; the hard work, expertise,
10  and devotion of Chroma's owners Lisa Casino and Michael Rey III; the ongoing
11  support and loyalty of Chroma's local, national, and international clientele; and the
12  local and national media attention Chroma has received because of its reputation for
13  excellence in the field of beauty products and services all attest to the considerable
14  value of the CHROMA brand as expressed through the CHROMA, CHROMA
15  COLOUR, CHROMA MAKEUP STUDIO, and CHROMA MAKEUP STUDIO +
16  C Design trademarks (the "**CHROMA Marks**").

17      15.    On information and belief, Boldface Group, Inc. and its subsidiary
18  Boldface Licensing + Branding (collectively "**Boldface**") are companies that
19  participate in the beauty industry primarily through marketing celebrity-endorsed
20  products.

21      16.    On June 6, 2012, Boldface issued a press release with the following
22  headline: "BOLDFACE LICENSING+BRANDING ANNOUNCES KHROMA
23  BEAUTY BY KOURTNEY, KIM AND KHLOÉ KARDASHIAN." The press
24  release displays the following composite word+design trademark above the
25  headline:

26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

4843-6621-9793.1

9
COMPLAINT

KOURTNEY KIM KHLOÉ
KHROMA
BEAUTY™

This composite mark is hereinafter referred to as the "**KHROMA BEAUTY mark**." The press release states that "In every generation there are certain women who personify beauty and who become icons for the standard of beauty at that time . . . Kourtney, Kim, and Khloé Kardashian embody beauty, style, and fashion in a manner that is at once desirable and relatable to women worldwide." The press release announces a "holiday assortment of . . . a stunning array of false eyelashes, a suite of mascaras, and Kardazzle Compacts" to be launched in December of 2012 at Ulta stores and that "a comprehensive launch" will occur in January and February of 2013. The press release further emphasizes that the Kardashians' "immediate brand recognition factor gives Khroma Beauty an advantage over most launching brands as it holds a wide-ranging, aspirational appeal," and that because Kourtney, Kim, and Khloé Kardashian are "truly iconic beauties," their "true star quality . . . sets Khroma Beauty apart, making it an iconic brand." The press release is archived on the "press" page at Boldface's website at www.boldfacegroup.com.

17. On information and belief, Kourtney, Kim, and Khloé Kardashian (collectively, "**the Kardashians**") are part of a prominent family of professionals, businesspersons, and world-famous television personalities. The Kardashians are the daughters of Kristen Mary Jenner (neé Houghton) and her first husband, Robert

Kardashian, who was a famous lawyer and businessman. Kourtney Kardashian became a reality television personality in 2005 when she appeared in the series *Filthy Rich: Cattle Drive*, which was produced by E! Entertainment Television (hereinafter "E!"). Two years later, all three of the Kardashians became reality television stars when E! began producing a series called *Keeping Up with the Kardashians*. The E! series has shown enduring popularity, and *Keeping Up with the Kardashians* has now completed seven seasons and is anticipating its eighth. An estimated 3.6 million viewers watched the finale of the seventh season, and, accordingly, E! has contracted to produce and broadcast the show for at least two more seasons. In 2010, the *New York Post* reported that Kim Kardashian was the highest paid reality television star and received approximately six million dollars for her work in that year on the *Keeping Up with the Kardashians* series. As one indicator of the extremity the fame enjoyed by the Kardashians, Kim Kardashian currently has more than 16.6 million followers on Twitter. The series had led to other opportunities for the Kardashians. In 2009, E! aired a spin-off reality television program called *Kourtney and Kim Take Miami*, which ran for eighteen episodes over two seasons and is scheduled to resume in 2013. A second E! spin-off, *Kourtney and Kim Take New York*, began in 2011 and ran for twenty episodes over two seasons in the last two years. A third spin-off, *Khloé & Lamar*, which also features the Los Angeles Clippers basketball star Lamar Odom, began airing on E! in 2011 and also for twenty episodes over the last two years. In addition, in 2012, Khloé Kardashian was one of the hosts of Fox Television's *The X-Factor* series. Further, in 2010, the Kardashians authored a book entitled *Kardashian Konfidential*, which became a *New York Times* bestseller beginning in January of 2011. The global stardom which the Kardashians have achieved in television and printed media has also provided them with opportunities to earn substantial revenue through various product endorsements.

18. On information and belief, on August 26, 2012, an episode of *Keeping*

*Up with the Kardashians* aired on E! Entertainment Television which featured Nicole Ostoya, the Chief Executive Officer, President, and Director of Boldface Licensing+Branding, for the purpose of introducing the KHROMA BEAUTY mark to the Kardashians. In that episode, after displaying some product packaging prototypes and hearing the reactions of the Kardashians, Ostoya states, as the episode records, "We gave you a couple different ideas for brand names, and, I think, immediately everybody gravitated towards KHROMA, which we were super happy about because we love that too." A clip from the August 26, 2012 episode in which the statement quoted above occurs is currently archived on the "press" page at Boldface's www.boldfacegroup.com website.

19. In the weeks that followed the August 26, 2012 episode of *Keeping Up with the Kardashians*, Lisa Casino and Michael Rey III began to receive concerned and worried communications from their clients, employees, and potential licensing partners in regard to the impending launch of the KHROMA BEAUTY products. All of these communications indicate that substantial and extensive consumer confusion has already occurred based on Boldface's pre-launch advertising campaign for the KHROMA BEAUTY mark.

20. Chroma's clients have expressed a variety of concerns which have ranged from worry to anxiety to outrage. Clients have wondered whether Chroma has become associated with the Kardashians, whether Chroma has licensed or sold its mark to the Kardashians, whether Chroma products will now be changed so that they can be marketed inexpensively in major retail stores, whether they should continue to purchase CHROMA products if people will mistakenly perceive CHROMA products as KHROMA BEAUTY products, whether Chroma itself is changing and moving away from its established traditions of individualized makeup services performed with expertise and uniquely customized cosmetics products provided with expert consultation, whether Chroma is going to discontinue its premier line of cosmetics and its elite makeup services, and/or whether Chroma is

1 | going out of business.

2 | 21. Chroma's employees have expressed concerns about job security and future pay because they rely on commissions from the sales of CHROMA products for a large portion of their income. Chroma's employees are highly sensitive to the very real danger that Chroma's clients will refrain from purchasing CHROMA products for fear that other people will mistakenly believe that they are wearing KHROMA BEAUTY products. Despite trying to provide reassurances to their employees, Lisa Casino and Michael Rey III are dealing with the many effects that these feelings of job insecurity among their employees are having upon productivity in the Chroma Makeup Studio.

22. For the past several months, Chroma has been building resources and developing relationships to allow Chroma to increase and expand its product sales through a collaborative licensing arrangement. One such potential licensing partner, Guthy Renker, discontinued promising discussions with Chroma after the Boldface press release issued in June of this 2012 because of the perceptions of the potentially negative effects that the launch of the KHROMA BEAUTY products will have on Chroma's sales. In addition, Chroma's consultant for developing licensing opportunities has informed Chroma that its planned overtures to Sephora and QVC, two other potential licensees with whom Chroma aspires to have relationships, will have to be suspended until Chroma can provide these potential partners with the reassurance that the KHROMA BEAUTY mark will not impair Chroma's future sales.

23. On October 29, 2012, in an effort to prevent further consumer confusion and to control the damage being done to its current business and to its future business expansion opportunities by the pre-launch publicity for the Kardashians' KHROMA BEAUTY brand, Chroma posted a letter to its clients on its website in which it declared that Chroma is not associated with the Kardashians.

24. Four days later, on November 2, 2012, Chroma sent Boldface a cease &

desist letter to inform Boldface of Chroma's prior trademark rights, of the injury that the pre-launch publicity for the KHROMA BEAUTY brand is doing to Chroma, and to demand that Boldface either change its proposed brand for the Kardashians' cosmetic line to a trademark that is not confusingly similar to the CHROMA Marks or to contact Chroma immediately to discuss other potential resolution scenarios.

25. Counsel for Boldface responded to Chroma's letter and a telephone conversation followed on November 6, 2012, but the telephone call did not result in a solution that would minimize the consumer confusion and misperception that currently exists and continues to grow among Chroma's clients, and thereby end the ongoing injury under which Chroma currently suffers. In addition, Boldface made no promise to cooperate with Chroma's effort to advance the Lanham Act's mandate that consumers should be protected from confusion, mistake, and deception in the marketplace.

26. On information and belief, on November 8, 2012, Boldface shipped KHROMA BEAUTY products to approximately 4,500 retail store chains throughout the United States, including Ulta, Sears, CVS, K-Mart, and Fred Meyer, so that those stores could begin selling to customers.

27. Chroma tried several additional times to initiate discussions with Boldface on November 9th, 12th and 13th, but Chroma did not receive a satisfactory response to any of its communications.

28. On information and belief, as of November 14, 2012, if not earlier, Boldface's KHROMA BEAUTY products are being purchased by customers in Ulta stores in Southern California, including in the Los Angeles area. On information and belief, the products being sold include false eyelashes, mascaras, overall face palette kits, eyeliners, and lip sets. These KHROMA BEAUTY products are also now available online through the www.ulta.com website, the www.sears.com website, and through the www.amazon.com website.

29. Faced with the facts of actual sales of KHROMA BEAUTY products

and the fact that Boldface has been unresponsive to Chroma's communications in regard to discussing a potential resolution that would minimize consumer confusion, Chroma determined on November 15, 2012 that preparing this complaint had become a necessity. By launching its KHROMA BEAUTY products with full knowledge of Chroma's concerns, Chroma's twelve years of prior trademark rights, and the clear evidence of confusion actually occurring among Chroma's clients, Boldface has harmed Chroma, violated Chroma's long-established intellectual property rights, injured Chroma's business, willfully infringed Chroma's common law trademark rights that are protected under both federal and state laws, and knowingly caused actual confusion among persons in the marketplace. Chroma brings this lawsuit to request relief from Boldface's infringement of Chroma's intellectual property rights and to uphold public policy, inherent in the provisions of the Lanham Act and in state laws, prohibiting business activities that deceive or confuse consumers.

30. The foregoing allegations are incorporated into each count below.

## COUNT ONE

### Trademark Infringement

31. Chroma realleges and incorporates herein by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

32. Boldface's conduct infringes Chroma's trademark rights under the Lanham Act, 15 U.S.C. § 1125(a)(1), and Chroma has suffered damages as a result of Boldface's infringement in an amount to be proven at trial.

33. Chroma's CHROMA, CHROMA COLOUR, CHROMA MAKEUP STUDIO, and CHROMA MAKEUP STUDIO + C Design marks have acquired considerable distinctiveness through twelve years of continuous use. The Chroma Marks are in use nationwide, but Chroma's overall CHROMA brand is extremely strong and well-known as a premier brand among beauty products and services consumers in the Los Angeles area. The KHROMA BEAUTY mark, on the other

4843-6621-9793.1

15

COMPLAINT

1 hand, has acquired no distinctiveness because Boldface has only just initiated actual
2 use in the past week; however, the KHROMA BEAUTY mark, as an overall brand,
3 has already attracted global attention due to the notoriety of the Kardashians.
4   34. The KHROMA BEAUTY mark is nearly identical and certainly
5 confusingly similar in appearance, pronunciation, meaning, and commercial
6 impression to Chroma's marks containing the CHROMA term. The dominant
7 elements in the marks, KHROMA and CHROMA, are pronounced identically, have
8 identical meanings, and are nearly identical in appearance. Actual consumer
9 confusion has already occurred, and these shared qualities make it very likely that
10 confusion will continue to occur among consumers.
11   35. The goods identified by Chroma's marks and by the KHROMA
12 BEAUTY mark are nearly identical and certainly highly related, and the goods are
13 marketed to customers in similar channels of trade, which makes it highly likely that
14 the consumer confusion which has already occurred will continue to occur and
15 expand among consumers.
16   36. Chroma is aware of many instances of actual consumer confusion and
17 has ample evidence of such occurrences of actual consumer confusion.
18   37. Chroma's clients exercise a high degree of care in choosing their
19 beauty products, and Chroma's employees exercise a high degree of care in assisting
20 clients in choosing the particular beauty products most suited to their features and to
21 show them to advantage. On the other hand, the consumers who purchase the
22 KHROMA BEAUTY products, which are being mass marketed at major retail
23 chains at inexpensive prices, are not likely to exercise a high degree of care in
24 making their purchases, which makes it highly likely that the consumer confusion
25 which has already occurred will continue to occur.
26   38. Chroma had been planning a major expansion effort for its products
27 with potential business collaborators and licensees when Boldface, with apparent
28 intention of flooding the market with advance publicity for its KHROMA BEAUTY

1 | brand, extinguished Chroma's current business expansion opportunities by creating
2 | a perception among such potential licensees that Chroma's sales will be
3 | significantly impaired and lessened by the launch of the KHROMA. Although
4 | Chroma is a well-established senior user with a highly estimable reputation and
5 | public recognition as a premier beauty goods and services provider in the Los
6 | Angeles area in support of its CHROMA brand, the junior user Boldface possesses,
7 | because of the personal fame and celebrity of the Kardashians, the ability to attract
8 | instant global attention for the KHROMA BEAUTY brand, and Boldface is using its
9 | power to overwhelm Chroma in the marketplace.

10 | 39. Based on all of the foregoing facts, Boldface's conduct has caused, is
11 | causing, and will continue to cause irreparable harm to Chroma and to Chroma's
12 | trademark rights under the Lanham Act, 15 U.S.C. § 1125(a)(1) unless Boldface is
13 | enjoined by this Court.

14 | 40. The Court should further find that this is an exceptional case under 15
15 | U.S.C. § 1117 and award Chroma treble damages and attorneys' fees.

## COUNT TWO

### Unfair Competition under California Law

18 | 41. Chroma realleges and incorporates herein by reference all of the
19 | allegations in the preceding paragraphs as though fully set forth herein.

20 | 42. California Business & Professions Code § 17200 provides that unfair
21 | competition includes "any unlawful, unfair or fraudulent business act or practice and
22 | unfair, deceptive, untrue or misleading advertising."

23 | 43. California Business & Professions Code § 17202 provides that
24 | "specific or preventive relief may be granted to enforce a penalty . . . in a case of
25 | unfair competition."

26 | 44. While the commercial laws of California encourage free enterprise and
27 | entrepreneurship, a junior trademark owner cannot disregard a senior trademark
28 | owner's prior rights by choosing a nearly identical trademark and then running

roughshod over the senior trademark owner simply because the senior user is small and the junior is large, extremely well-funded, allied with world famous celebrities, and consequently has the power to do so. Such behavior constitutes an unfair business practice and contravenes the California Business and Professions Code. Having chosen the KHROMA BEAUTY trademark, Boldface has attempted, through the Kardashians' star-power to attract massive publicity, to disregard Chroma's CHROMA Marks and crush Chroma under the juggernaut of its advance marketing for the launch of the KHROMA BEAUTY brand products and, subsequently, under its nationwide product launch. Boldface's conduct constitutes unfair competition, which is prohibited under California Business & Professions Code § 17200 *et seq.*

45. Boldface's conduct has caused, is causing, and will continue to cause, irreparable harm to Chroma unless it is enjoined by this Court.

46. Chroma has suffered damages as a result of Boldface's unfair competition in an amount to be proven at trial.

## JURY DEMAND

47. Chroma demands a jury trial.

## RELIEF

**WHEREFORE**, Plaintiff asks the Court to:

1. Enter judgment in favor of Chroma in an amount to be proven at trial;

2. Enjoin Boldface and its officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, from using the KHROMA BEAUTY mark and/or any other brand, symbol, trademark service mark, product design or product packaging which is confusingly similar to Chroma's CHROMA Marks.

3. Award Chroma its costs and attorneys' fees incurred in this action;

4. Award Chroma enhanced damages because of the willful nature of Boldface's trademark infringement; and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

5. Grant any other relief the Court deems just and equitable.

DATED: November 19, 2012          LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
        Deborah F. Sirias

DATED: November 19, 2012          FREDRIKSON & BYRON, P.A.

By: _____
        Paul E. Thomas
        Lora M. Friedemann

*Attorneys for Plaintiff* CHROMA MAKEUP STUDIO LLC